Good morning, Your Honor. My name is Derek Lim, and I represent the petitioner. And I'd like to reserve a few minutes for rebuttal. In this case, the record presented itself the issue whether the immigration judge has stated specific and cogent reasons for adverse credibility findings. Basically, the immigration judge has identified the reasons why my client is not credible. I can group that into three groups. One is the I.J. thinks that my client is not responsive to his questions. And second, the I.J. has relied on the country condition report to say that the abortion of his wife is voluntary and based on some information given to the U.S. consulate in China. And third, the I.J. thinks that a lot of my client's testimony are not plausible. And then in my brief, I have addressed all these arguments. Mr. Lim, you'd have to agree that there are inconsistencies in the answers your client has given, correct? Yes, I agree. But I think on the whole, his testimony in the several hearings, he had three or four proceedings in front of the immigration judge. But I think on the whole, his testimony in the hearings are not inconsistent with his written asylum application, which was submitted in 2001. The immigration judge believes that my client is not responsive, but he had not made an evasive demeanor findings. You know, my client has tried his best to answer the question. He has never refused to answer it. And then when evaluating his testimony, I think we have to give consideration that he only has three years of elementary education. And then he is trying to remember and answer as best as he could. And on the second point, it's the I.J. has relied on the country condition, the State Department of Country Condition in the 2004, saying that based on the information given to the U.S. consulate in China by the Chinese government, that there were no forced abortion in the province that my client came from. But the 2004 country condition report contradicts that and documented that there were forced abortions in the province where my client came from. And lastly, and I believe that on the facts and circumstances, that his wife's abortion would be forced based on there are like so many people came to take her to be for the examination to make sure that she's pregnant and then for an abortion. And also one of the documents showing that if it is a voluntary abortion, the woman would be given paid sick leave for two weeks. But my client's wife is a housewife. She doesn't work. So there's no reason for her to have paid sick leave by going to submit a voluntary abortion. And third, on the country condition report saying that usually in China nowadays is the urban couples, the people who live in the city for economics reason would voluntarily have an abortion. But my wife, my client is a fisherman. His wife is a housewife, and they live in a village. They are not an urban couple. So there are really no incentive for them to voluntarily abort the second pregnancy. Your client's been away from China for a number of years now, correct? Yes, Your Honor. And his children have grown up, have they not? Yes, his children. I think I believe one is seven years old and one is nine years old. He has two children. So they're not grown. Yes. They're older. Yes, they're older now. I was under the impression that perhaps they were older. So we're asking his adverse credibility finding be reversed and then will be remanded to the board to determine whether he did suffer a past persecution and also for the government to rebut the presumption of a past persecution. Okay. Let's hear from the government, and then you can have your rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. My name is Christina Martin. I'm here on behalf of the U.S. Attorney General. In this case, the agency denied the Petitioner's request for asylum and withholding on his lack of credibility as to his persecution claim regarding China's family planning policies. Substantial evidence in the record shows it supports the specific and detailed pre-real ID adverse credibility determination by the agency. The immigration judge drew reasonable inferences in evaluating the Petitioner's credibility. The one thing about what the I.J. did here kind of troubled me just a bit. Maybe you can help me understand what the I.J. was up to. He apparently has decided a number of these cases, and he had certain impressions about what records are available and what happens to couples in China based on what he heard in other cases. Yes, Your Honor. He sort of drew on his own experiences in judging the credibility of the witness. Now, what's the basis for that? What's the authority for doing that? Speculation as to what may have occurred in China at the hospital is not the basis. What's the foundation for that? I mean, there's nothing that you need evidentiary, you need some evidence in the record to support that kind of speculation on his part. Yes, Your Honor. In fact, there is. As part of his adverse credibility determination, there was an inconsistency – it pertains to an inconsistency on the part of the Petitioner. Regarding the medical records, the Petitioner stated that he didn't know if the hospital where his children were born had maintained medical records. However, he later testified that the family planning officials had looked into his wife's hospital records to confirm whether she had arthritis as it relates to whether or not they would force her to undergo sterilization. So the IJ, though he did make those statements about previous cases, he did reasonably infer because of the Petitioner's testimony that the hospital did in fact maintain medical records on his wife and his children. In fact, the hospital issued birth certificates, which the Petitioner has submitted on both of the children. So this – it makes his inference that there was probably medical records at this hospital reasonable. Let's see. He also used the way in which he was kind of like – he expressed, I don't know, he seemed to suggest that the whole business about her pregnancy was – the story about her pregnancy just wasn't plausible sort of based on his under – based on the circumstances that were presented. I'm sorry. Where does that come from? The thing is he also based that belief on numerous inconsistencies on the part of the Petitioner, internal consistencies in his testimony. Doesn't the report, the country report, refer to – is it Fujian province? That there are gaps in the government's knowledge about what goes on there and they don't necessarily – they're not able to rely on the information that they're getting and the doctors reporting the number of incidences of forced abortions and doesn't the report say that, number one? Your Honor, I'm not aware exactly of where in the report it says that precisely. I know that the State Department reports recognize that the information that they receive is imperfect. However, they're still reliable. As you know, they're often relied upon by immigration judges for their accuracy, though the information may not be absolutely complete. The immigration judge drew the conclusion that the abortion certificate indicated that the abortion was voluntary in the face of testimony that it was not voluntary. What about that certificate evidences the fact that this was a voluntary abortion, particularly in view of the fact that the testimony also seemed to be that they had gotten pregnant a number of times? Your Honor, that's correct. In the 2004 State Department profile on China where they talk about how these – that these abortions were issued in the cases of a voluntary abortion and not in the cases of a forced abortion. And both the Second and the Seventh Circuit had recognized that these particular abortion certificates actually undermine the very claim that they are seeking to support. I'm not sure if I answered your question. So the government of China doesn't issue abortion certificates for its forced abortions, is that correct? That's what's in the 2004 report, Your Honor. Okay. Another inconsistency, internal inconsistency in his testimony was where he first asserted that his wife was not given an examination for pregnancy before she was forced to have an abortion. However, he later asserted that she had been examined. When asked if the family planning officials were aware that his wife was pregnant because her stomach was protruding, he first answered yes, and then he later answered no. Well, I.J. didn't really rely on that point in drawing – in rendering his decision. I believe he did, Your Honor. I believe he did. Did he actually rely on that? That there were – he relied on these numerous inconsistencies, and I believe that was one of them, Your Honor. Did he specifically rely on the one that his stomach was protruding? Yes, I believe so. I can check back for you. That's okay. But let me ask you about the other one, the one you just noted, where you said that about the examination. Yes. Why is that even an inconsistency? Because he later testified that she got the examination before they gave her an abortion. If I'm remembering correctly, during the testimony, there were numerous questions back and forth between – I believe it was on direct examination between the Respondent's Counsel and the judge about – the judge, I just can't believe that they would come, 10 family planning officials, and they would take her away just because she had missed one gynecological exam. And the petitioner kept insisting, yes, of course, is what they do. If they miss it – if a woman misses her exam by just a few weeks, then they just assume that she's pregnant. But the judge found it very hard to believe that they wouldn't at least do a pregnancy test before they forcibly aborted her. And he later testified they did the examination when they did the – before they did the abortion. The only thing I'm trying to – I don't understand what's inconsistent about that. Well, the only thing I'm trying to point out is he first said that – he categorically said no, that they did not perform an exam on her before. And maybe it was a misunderstanding, Your Honor, but he –  It could have been, Your Honor. He testified, and yet he says it's a major inconsistency. It could have been. But as you can see, as I'm mentioning, there are other internal inconsistencies in the testimony. And the same sort of thing happened with respect to the IUD device. Yes, Your Honor. That as well. It's the first – It's like that's just nothing more than a misunderstanding. Your Honor, with these multiple misunderstandings, it's not unreasonable for the immigration judge, especially with, as the opposing counsel noticed, his non-responsiveness during the proceedings. I can count on at least 12 occasions where either the judge or one of the counsels attempted to elicit a response that correlated to the question from the Petitioner, and he was non-responsive, and it took several times for him to come up with a response. Do you have any evidence that he had more than a third-grade understanding? No, Your Honor. In fact, the immigration judge did recognize that. But he was, as the initial fact finder, he's the one that's best placed to look at the Petitioner's demeanor and to gauge whether that – whether it's just a question of his lack of education or little education, or if it's actually him just reciting a memorized claim, and maybe he didn't have a specific answer to that specific question for the claim that he memorized. There's a pretty significant transcript in the record that does evidence some of this inconsistency in the immigration judge's attempts to square it, you know, by asking repeated questions and trying to make it simpler. Notwithstanding that, this kind of a discussion with someone with a third-grade understanding would be difficult at best under any circumstances, correct? It could be difficult, Your Honor. But at the same time, he never mentioned that he didn't understand. The questions were repeated, sometimes a few times. He never stated that he had a problem with the interpretation. So the immigration judge can only assume that he might be trying to evade the question on numerous occasions. This didn't just happen once or twice, but it – Well, that's one conclusion you could draw. I would like to conclude. I see my time has finished, Your Honors. Therefore, because the immigration judge's adverse credibility determination is supported by substantial evidence in the record, and because the Petitioner has not demonstrated eligibility for this relief, the Court should deny his petition for review, even if you find this – I'm just going to ask you, in the event we disagree with you, we reach a different conclusion on the adverse credibility determination, what do we do? Well, in his – either his reply brief or his initial brief, the Petitioner requested – asserted that he would be pro se eligible for asylum based on past persecution because his wife – even if he's found credible, his wife underwent a forced abortion. This is no longer the law. After a matter of JS in 2008 and then Zhang v. Gonzalez in the Ninth Circuit, it's clear, which gave Chevron deference to a matter of JS, it's clear that he would have to show other resistance to family planning policies. And then would have to go back. I believe so, Your Honor, yes. Would have to go back for further development of the record. For a past persecution. But it's true to – well, he also made a claim of future persecution based on forced sterilization. And both the IJ and the BIA found that he made no individualized showing of this and that the country reports didn't support this assertion or this claim. He testified there were four other gentlemen that he knew in his village who had been forced to be sterilized, correct? He did claim that, Your Honor, yes. And yet there's nothing individualized in the record that indicates that he would have faced similar – a similar fate if he were to return. No, Your Honor. In fact, there's no affidavits or letters from these four men or from anybody else in his village corroborating this information. So if we reverse the adversary of allegations against him, would he actually pass persecution? I believe so, Your Honor, that that would be his only claim. At that point. Yes. But the thing is, too, that he also said during his testimony and asked point blank if he had resisted the family planning officials, he answered no. However, this wasn't fleshed out completely. And the Board didn't specifically address that issue? No, Your Honor. So we couldn't address it? No, Your Honor. Okay. If you find this to be a close case, we ask that the Court be extremely deferential to the agency's determination as per Singh, Kaur v. Ashcroft. Thank you for your time. Thank you. Thank you. Your Honor, I think in this case, the Court accepts that my client is credible. Then on the whole, what the I.J. thinking is not reached, should not be accepted because it's not supported by the record. And also, the government has said that maybe they will need some corroboration of the four men who have been sterilized in his village. But this is like a pre-real ID act. This case was filed in 2003, so no corroboration is necessary under the law. And regarding the voluntary abortion, government has mentioned that in China, if the abortion was forced, then the government would not issue an abortion certificate. I think that's just some kind of like a blanket statement. It did not address it in every case that no certificate would not be issued. So and also, the government cited the 2000, I believe it's 2002 country report. As I stated, that was also contradicted by the 2004 country report. So I have no further. Okay. Thank you. Thank you. Thank you. Meehan v. Holder is submitted.
judges: Watson, Hug, Paez